DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT MARCH TERM, 1863.

---

THE MAYOR AND COMMON COUNCIL OF JERSEY CITY v. THE STATE, JOHN HOWETH ET AL., PROSECUTORS.

1. A *certiorari* to remove and set aside an assessment for improving, curbing, and guttering a street, which the prosecutors allege encroaches on their property, is not the proper mode of trying the title of the prosecutors to the land in question.

2. The proceedings of surveyors of the highways in vacating part of a street which had been dedicated to public use, but never recognized as a public highway by lawful authority, held to be void. (See 1 *Beasley* 299, *Holmes* v. *Jersey City*.) The Court of Common Pleas cannot appoint surveyors to vacate a mere act of dedication.

3. The Supreme Court cannot, upon affidavits taken upon a *certiorari* to remove an assessment, either properly or conveniently try title to lands, and settle disputed facts involving a determination of questions of fraud and intention.

4. An assessment will not be set aside merely because the money has been expended upon land not properly subjected to public use.

5. A notice of intention to pave a street, unless otherwise expressed, refers to a street as it is *de jure.*

6. The right of reconsidering lost measures inheres in every body possessing legislative powers.

---

Error to the Supreme Court.

**521**

A *certiorari* was sued out of the Supreme Court, at the instance of John Howeth *et al.*, prosecutors, against the Mayor and Common Coucil of Jersey City, to remove into that court an assessment made under an ordinance of the common council for paving and improving Bright street. The Supreme Court set aside the assessment, as to the prosecutors, principally for the reason that the ordinance had not been regularly passed, and was not legal.   (See *ante* 93.)

The cause was removed into this court by writ of error.

For the plaintiff in error, *A. D. McClelland* and *A. O. Zabriskie.*

For the defendant, *J. Flemming* and *W. B. Williams.*

CHIEF JUSTICE.   When this assessment was made, Bright street was *de facto* eighty feet wide.   To that width it had been filled in, curbed, guttered, ·and the sidewalks laid, in pursuance of the ordinance passed September 20th, 1859. Before the work was done, the prosecutors had submitted to the claim of the city to have their fences on the south side of the street, within that width, removed.   After their removal, the work was done without further objection by the prosecutors; indeed one of them, John Coar, proposed for the work.   On the 27th November, 1860, more than a year after the passage of the ordinance directing the work to be done, the assessment was made, which was removed into the Supreme Court for review.   On the 11th December, 1860, the prosecutors remonstrated against its confirmation, for reasons affecting only the mode of making, and the principles upon which the assessment was made, not alleging that the improvement had been illegally ordered.   The remonstrance itself shows that they had submitted to the action of the city council in regard to the removal of all encroachments within the line of the street at its width of eighty feet; indeed they complain, that they have not been allowed compensation for work done where it was filled in at the width of sixty feet.

On the 28th February, 1861, a *certiorari* was allowed and issued on application of the prosecutors, to remove, in the language of the writ, the assessment, and all the proceedings touching and concerning the same, into the Supreme Court; and according to the practice of the court, reasons were assigned for setting it aside, none of which allege that the ordinance was illegal because it provided for improving the street at the width of eighty feet.

In this posture of the case, the principal reason urged for setting the assessment aside was, that Bright street had been illegally ordered improved, as prescribed by the ordinance, at the width of eighty feet, whereas in fact and in law the street was only sixty feet wide ; and that in doing the work, the property of the prosecutors on the street had been encroached upon, and taken out of their possession and comprehended within the street, thus adding to the street, on its south side, a strip of land twenty feet in width, to which the city had no right.

A *certiorari* to review the assessment, sued out under such a state of facts, was not a proper mode of trying the title of the prosecutors to this strip, or whether it still remained subject to its original dedication as a street.

The city claimed that Grand street, the name of which at this point has been changed to Bright street, had been dedicated as a street eighty feet wide, in the year eighteen hundred and thirty-five, by Van Vorst, who mapped out the property through which it ran into city lots, and laid down on the map the street eighty feet wide ; that he sold lots by the map with reference to the street so laid down, and to make the act of dedication to public uses unequivocal, deposited the map, as a public record, in the county clerk's office, while the land was still a part of the township of Van Vorst.

On the other hand, the prosecutors insisted that the city had accepted the dedication of the street only as sixty feet wide, not including this strip of land claimed by them, and,

as such, had ordered it filled, by an ordinance passed in 1852, the year after the incorporation of the city.

After the act of dedication, by Van Vorst, of the land, and before it became subject to the provisions of the city charter, it still being in the township of Van Vorst, in 1846, surveyors had been appointed under the highway act, *Nix. Dig.* 700,* who, by their certificate and return, had vacated a strip of the road on the south side twenty feet wide, being the land in dispute, thereby assuming the authority to annul Van Vorst's act of dedication *pro tanto*, although the street had never been recognized by public authority as a public highway.

This proceeding of the surveyors, this court, in the case of *Holmes* v. *Jersey City*, decided in November, 1857, 1 *Beasley* 299, declared null and void for want of jurisdiction in the Court of Common Pleas to appoint surveyors to vacate a mere act of dedication, reversing the decision of the Chancellor, holding that the act of vacation was valid. The facts of the case will be found fully stated in the report, and need not be repeated.

Upon the argument, counsel discussed elaborately the points made by them; that by this action, under these facts, the city was estopped, legally or equitably, from claiming this strip as a part of the street, or that at least the facts showed an acceptance by the city of the acts of dedication only to the extent of a street sixty feet wide, and a rejection of the residue of the dedication.

If the prosecutors wished to try these mixed questions of law and fact, they have not taken the proper mode or time to do so. They should have done that by an action of trespass, or have refused to give up possession, and compelled an action of ejectment, or have, in some other way, made a direct issue with the city upon their claim to the land as private property, discharged of the consequences of the dedication.

The attempt has been made in this suit, to try and deter-

* *Rev., p.* 989.

mine a question of title to lands not directly, but collaterally, and that too without the intervention of a jury. A determination of the case in their favor upon this point would not give the prosecutors the possession of the lands or settle the controversy. The opinion of the court upon the facts, as they appear here, would not necessarily conclude the parties to a common law action, where the facts might be different as proved.

The Supreme Court could not, upon affidavits taken upon an assessment *certiorari*, either properly or conveniently try title to lands and settle disputed facts, involving the determination of questions of fraud and intention.

The theory upon which the prosecutors assumed that these questions were involved in the case seemed to be this: that the assessment was null and void if made for paving a part of a street the city had not acquired the right to as a street; that this was a misapplication of the money, and therefore they could not be assessed to pay it. If this position should be held sound, it is much to be feared that few assessments could be collected. To permit such questions to be raised in such a mode would be not only extremely inconvenient in practice, but seems to be the assumption of a rule of law clearly unsound.

If these prosecutors should be permitted to raise these questions in this way, no reason is perceived why any other property holder assessed could not do the same; for, on the theory assumed, the right to do so does not rest upon the ownership of land encroached upon.

If an assessment may be set aside merely because the money has been expended upon land not properly subjected to public use, the extent of the infringement is obviously immaterial—it would not matter whether it was six inches or twenty feet.

The width of the street, as paved, could not be questioned upon the *certiorari*. *State* v. *Jersey City*, 5 *Dutcher* 441.

This view of the case disposes of the point discussed on the argument, whether the burthen of proof, as to the width of

VOL. I.                    2 K

Bright street, lay upon the city or upon the prosecutors; the latter alleging that upon an assessment *certiorari*, the city was bound to support the assessment by proof of the legal width of the street. If they were bound to do so in this case, why would they not be compelled to do so in all cases? This claim of the prosecutors seems to set in clear light the absurdity of the whole attempt to try the title to the land upon *certiorari*.

Although the court will not, for the reason stated, undertake to settle the rights of the prosecutors to the disputed lands, yet I am unwilling to let this case pass without expressing my dissent from the view expressed by the Supreme Court of our decision in *Holmes* v. *Jersey City*.

It was decided in that case, upon the facts then before the court, not only that the return of the surveyors was null, but that Bright street was legally eighty feet wide. This court so intended to decide; and after the cause was remanded to the Court of Chancery, a decree was entered, founded upon the opinion of this court, that the street was eighty feet wide.

The late Chief Justice, in delivering the opinion of the court, said: the proceedings of the surveyors, appointed by the Common Pleas of Hudson county, altering the width of Grand street (now at this point called Bright street) as originally dedicated and opened, were null and void, and that the street, until altered by competent authority, must be deemed and taken to be eighty feet wide.

Such is the effect of the dedication until the common council, by virtue of the power granted by the charter, shall alter the width of the street.

The same view was taken by this court of the effect of such a dedication in the case of *The Mayor, &c., of Jersey City* v. *The Morris Canal and Banking Company*, 1 *Beasley* 548. The opinions then expressed were necessary to the decision of the cause, and not mere *obiter dicta*, and were concurred in by the court. · If therefore the question, whether Bright street was eighty feet wide when the ordinance passed

directing the improvement, properly arose for decision in this case, I can perceive no reason for coming to a different result from that arrived at in *Holmes* v. *Jersey City*. If the city, submitting to the authority of the return of the surveyors, and by mistake assuming it to be binding upon the city while it remained unreversed, worked the street only sixty feet wide, and the lot holders enclosed the residue of it within their lots, put fences around, and buildings upon the strip of land, such action, so founded upon mistake, cannot be regarded as a partial acceptance of the whole dedication, and a rejection of the residue.

If the doctrine of estoppel *in pais* can be applied to such a case, under any circumstances, which it is not now necessary to decide, no estoppel could arise where one of the parties to it— the city—acted not *sua sponte*, but in submission to supposed legal coercion, nor to a case of mutual mistake.

No act or conduct of the city authorities, while the vacatting proceedings were supposed valid, can have any other interpretation than that of submission to legal authority. They cannot, for the same reason, be regarded as refusing to accept a dedication as a whole, a part of which both parties supposed was legally annulled.

While the city is in its nascent state, and before the streets are improved, little regard is had to strict street lines. Encroaching lot owners, sometimes for temporary convenience, and at other times intending permanently to acquire the lands, often build within the street lines; they did so in this case, but by so doing acquired no right of permanent possession or title.

The contrary doctrine would effectually destroy great public rights in all cities which, like Jersey City, depend upon the doctrine of dedication for the preservation of their parks and streets.

The effect of the Van Vorst dedication in 1835 has not been limited or impaired by any act, conduct, neglect, or acquiescence of the city, and Bright street is still eighty feet in width.

It was objected that no notice was given, as required by the charter, of the object of the ordinance as passed. It was conceded that a notice was given of an application for an ordinance to have Bright street, between Grove and Jersey street, improved. The ordinance, as passed, conformed to the notice, except that it expressed that Bright street was to be improved at its legal width of eighty feet. This is no variance. When a street is improved, the law implies that it is to be done at its legal width. The additional expression was surplusage; it was not necessary to state the width of the street, the thickness of the flagstones, or the size of the pebbles with which the paving was to be done.

Of necessity, a notice of intention to pave a street, unless otherwise expressed, refers to a street as it is *de jure,* unless it be the law that encroachments must be removed before the presentation of the petition for the improvement. The notice given located and defined the extent of the improvement; it is not bad because it did more.

To say that the ordinance was in effect to widen the street, assumes that the street was not *de jure* eighty feet wide, and that erections standing upon the twenty feet were upon the private property of the prosecutors; it has been already shown that the street was of right eighty feet wide.

The ordinance was to pave, first removing the obstructions, not widen it. The city could not proceed in any other way without admitting the right of the prosecutors to the land, and compensation for the encroaching improvements.

The judgment below was founded upon the position, that if the street had been encroached upon by buildings and fences within its limits, the proceeding must be to widen the street, or pave it as it was. It loses sight entirely of the question, whether the buildings and fences were lawfully within its limits or not; whether the lot holders were or were not encroachers; if they were, there was no necessity of any legal proceeding to increase the width; it was a question of labor, not law; nor were they assessed to pay for their own

ruin; if they were not encroachers, they should not have admitted they were by voluntarily yielding up the possession.

It was objected that the ordinance was at the first meeting lost, and the vote reconsidered, and laid upon the table, and passed at the next meeting. The right of reconsidering lost measures inheres in every body possessing legislative powers. .

Equally untenable is the objection, that the ordinance was amended in the mode already mentioned; after reconsideration, the sense was in no essential respect changed.

The objections taken to the assessment itself are not sustained by the facts. The commissioners did determine the property benefited by the improvement, and described it sufficiently, and what proportion of the expenses should be borne by the several owners thereof; and they have stated that they made a map and schedule containing a full statement of the assessment, the several lots and property benefited, the several and respective amounts of such benefit, and the names of the owners of such lots and property, respectively, to which they refer as a part of their report.

It was also urged that the assessment was made upon what is called the frontage principle. If that mode properly distributed the benefits among the owners of the property benefited there can be no objection to its use.

The court has held that this principle must not be arbitrarily applied, without the exercise of judgment in each case. The principle is not necessarily wrong in all cases. That is as great an error as to assume it right in all cases.

*For reversal*—Combs, Cornelison, Elmer, Haines, Kennedy, Fort, Swain, Whelpley, Wood.   9.

*For affirmance*—None.

Judgment of Supreme Court reversed.

Cited in *State, Moran, pros., v. Hudson City,* 5 *Vroom* 27–31; *State, Associates Jersey City, pros.,* v. *Mayor, &c., of Jersey City,* 5 *Vroom* 44; *State, Pudney, pros.,* v. *Passaic,* 8 *Vroom* 68.